**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51512**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 23, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| APRIL NACOLE DIXON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

Judgment of conviction and sentences for possession of a controlled substance (methamphetamine) and introduction of major contraband into a correctional facility, <u>affirmed</u>; order partially denying motion to suppress, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kierra W. Mai, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

April Nacole Dixon appeals from the judgment of conviction for possession of a controlled substance (methamphetamine) and introduction of major contraband into a correctional facility. Dixon contends the district court erred in partially denying her motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Trooper Rodier conducted a traffic stop of a vehicle driven by Dixon. Trooper Rodier asked Dixon for her license, insurance, and registration. Dixon provided her driver's license and indicated that she would need to pull up the insurance information on her phone. While attempting to locate her insurance information, Trooper Rodier asked Dixon if there were any weapons or drugs in the vehicle, which Dixon denied. In response to questions from Trooper Rodier, Dixon

1

acknowledged that she had been on probation in the past. Trooper Rodier noticed a "pen thing" of some type under Dixon's purse. Dixon told Trooper Rodier that she would need to have her husband send the insurance information. Dixon declined Trooper Rodier's request for permission to search the vehicle. Trooper Rodier radioed for a K-9 unit. Dixon informed Trooper Rodier that she did not have her registration but that a check on the vehicle's registration would return to herself or her husband. Trooper Rodier was informed that no K-9 units were available.

After Dixon obtained the insurance information, Trooper Rodier returned to his patrol car to run Dixon's information. While waiting for the information, Trooper Myers arrived and, after talking with Trooper Rodier, approached Dixon's vehicle and noticed a "slick," which he recognized from his training and experience often contains illegal substances. Trooper Myers asked Dixon to open it and, when she did, a white substance spilled out, which Trooper Myers believed to be a controlled substance. As Trooper Rodier completed communication with dispatch and exited his patrol car, he noticed Trooper Myers attempting to get his attention in regard to the located substance. After approaching Dixon's vehicle, Trooper Rodier and Trooper Myers, both questioned her about the white substance. Dixon denied the substance was methamphetamine; the troopers placed Dixon in handcuffs. Prior to reading Dixon her *Miranda*[1] rights, Trooper Myers asked Dixon about drugs, and she admitted there were drugs in the vehicle and that she had used marijuana four days prior.

During the vehicle search, the troopers found methamphetamine, marijuana, and drug paraphernalia. At the jail, Dixon acknowledged possession of and produced a pipe. The State charged Dixon with felony possession of a controlled substance (methamphetamine), Idaho Code § 37-2732(c)(1), felony introduction of major contraband into a correctional facility, I.C. § 18-2510(3), misdemeanor possession of marijuana, I.C. § 37-2732(c)(3), and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A(1), together with a sentencing enhancement, I.C. § 37-2739.

Dixon filed a motion to suppress, arguing that Trooper Rodier unlawfully prolonged and deviated from the purpose of the stop by questioning her extensively about drugs and her criminal

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

history without reasonable suspicion to conduct a drug investigation.[2]  At the suppression hearing, Troopers Rodier and Myers testified, and dash camera video and photographs were admitted.  The district court held that Trooper Rodier did not unlawfully deviate from or extend the stop.  The district court found that Trooper Rodier's questions regarding Dixon's drug and past criminal history were made while Dixon was looking for insurance information.  The district court also found that the investigation of the traffic infraction was still ongoing at the time Trooper Myers discovered the "slick."  The district court concluded that Trooper Rodier did not unlawfully deviate from or prolong the duration of the traffic stop.

Dixon pled guilty to felony possession of a controlled substance (methamphetamine) and introduction of major contraband into a correctional facility, reserving her right to appeal the partial denial of her motion to suppress.  The State dismissed the other charges.  Dixon appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

"Mindful" of the district court's factual finding that Trooper Rodier engaged in the drug-related questioning while Dixon located her insurance information, Dixon contends that the district court erred in denying her motion to suppress by concluding that Trooper Rodier did not unlawfully deviate from or extend the traffic stop when he engaged in the drug investigation.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures.  *Delaware v.*

---

[2]     Dixon also moved to suppress her statements made after being placed in handcuffs and prior to Trooper Rodier reading Dixon her rights, which the district court granted.

*Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356.

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 410 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

The district court found that Trooper Rodier called for a K-9 unit and asked Dixon about drugs and her criminal past while waiting for her to locate her insurance information. In addition, Trooper Rodier was processing Dixon's information while he spoke with Trooper Myers and when Trooper Myers subsequently recognized drug paraphernalia in plain view. Dixon does not challenge the district court's factual findings, and the findings are supported by substantial and competent evidence in the record. Because Trooper Rodier was at all times diligently pursuing the mission of the traffic stop, the district court properly concluded that Trooper Rodier did not unlawfully deviate from or extend the traffic stop.

## IV.

## CONCLUSION

Dixon has shown no error in the district court's findings or conclusion that Trooper Rodier did not unlawfully deviate from or extend the traffic stop. Therefore, Dixon's judgment of conviction and the district court's order denying the motion to suppress are affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.